IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MOUNTAIN STATES AGENCY, LLC,

        Plaintiff/Counter-Defendant,

  v.                                    Civ. No. 20-41  JFR/LF

BLAINE HARRINGTON,

        Defendant/Counter-Claimant.

## ORDER AWARDING PLAINTIFF ATTORNEY FEES

**THIS MATTER** is before the Court on Plaintiff's Motion for Award of Attorney's Fees filed October 30, 2020.[1]  Docs. 44-45.[2]  Plaintiff's motion for attorney's fees was due thirty days after the October 1, 2020 entry of final judgment in Mountain States' favor.  *See* Doc. 42. Because October 31, 2020 was a Saturday, Plaintiff's amended motion was timely filed on Monday, November 2. *See* Doc. 45.  Defendant responded to the motion for fees on November 13, 2020 (Doc. 46), and Plaintiff replied on November 20, 2020 (Doc. 47).

In its request for attorney's fees, Plaintiff Mountain States Agency, LLC ("Mountain States"), seeks an award as the prevailing party on Defendant/Counterclaimant Blaine Harrington's counterclaim for copyright infringement pursuant to Section 505 of the Copyright

---

[1] This motion is before the Court pursuant to the Notice of Rule 73 Consent to a Magistrate Judge filed in this case on February 14, 2020. Doc. 13.

[2] Plaintiff's counsel assumed Defendant would be opposed to its motion for fees, and therefore, admittedly neglected to comply with Local Rules 7.1 and 54.5 in its initial motion; the rules require parties to confer about such motions and seek agreement prior to filing.  D.N.M.LR-Civ. 7.1 and 54.5.  Three days after filing its initial motion, Plaintiff corrected its mistake, by seeking such approval, which Defendant denied.  *See* Doc. 45.

Act of 1976, 17 U.S.C. § 505[3] and Local Rule 54.5.[4]  Additionally, or alternatively, Plaintiff

seeks an award of fees pursuant to 28 U.S.C. § 1927[5] and Rule 11 of the Federal Rules of Civil

Procedure[6] based on Defendant's alleged unreasonable and vexatious conduct in this proceeding.

Plaintiff also cites the Court's inherent authority to award fees under the circumstances present

here.  *See Chambers v. NASCO, Inc*., 111 S. Ct. 2123, 2131-33 (1991) (finding the inherent

power to impose sanctions when a party has acted in bad faith, vexatiously, wantonly, or for

oppressive reasons "transcends a court's equitable power concerning relations between the

parties and reaches a court's inherent power police itself, thus serving the dual purpose of

"vindicat[ing] judicial authority without resort to the more drastic sanctions available for

contempt of court and mak[ing] the prevailing party whole for expenses caused by his

opponent's obstinacy."). Plaintiff's request for fees is limited to those fees arising after Plaintiff

accepted Defendant's Offer of Judgment on June 2, 2020 (Doc. 32) because that offer included

costs and fees incurred prior to that date.  Doc. 44.

---

[3] Section 505 provides, "In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party . . . . Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."  17 U.S.C.A. § 505.

[4] The rule provides as follows:  (a) Filing of Motion. A motion for attorney's fees . . . must be filed and served within thirty (30) days after entry of judgment. Failure to file and serve within this time constitutes waiver of a claim to attorney's fees. Movant must submit supporting authority and evidence (affidavits and time records). The motion must comply with D.N.M.LR-Civ. 7. (b) Time Records**.**  An attorney must keep concurrent time records in 42 U.S.C. § 1983 cases and in other actions where there is a potential for an award of attorney fees. Time records are kept by the attorney and are not filed until after final judgment unless otherwise ordered.  D.N.M.LR-Civ. 54.5.

[5] Section 1927 provides:  "Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.

[6] An attorney's signature on the complaint or other pleading in a suit in federal court constitutes a certificate "that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."  Fed. R. Civ. P. 11. If there is a violation the court can sanction the lawyer, the client, or both. *Id.* These sanctions may include payment of the other party's "reasonable expenses incurred because of the filing . . . including a reasonable attorney's fee." *Id. White v. Gen. Motors Corp*., 908 F.2d 675, 679 (10th Cir. 1990).

As explained below, the Court GRANTS IN PART and DENIES IN PART Plaintiff's

Motion for Attorney's Fees.  Attorneys' fees are awarded pursuant to 17 U.S.C. § 505 against

Defendant and his attorney, and under 28 U.S.C. § 1927 against Mr. Deal; the motion is denied

on the other grounds by which Plaintiff sought to obtain an award for fees.  The amount of fees

Plaintiff will be awarded is $14,550.  The Court orders that Mr. Harrington and Mr. Deal are

jointly and severally liable for that amount, with each being ordered to pay Mr. Squires' within

thirty (30) days of this order.

## Procedural Background

The general background of this dispute is explained in this Court's prior order regarding

Defendant's offer of judgment and Plaintiff's acceptance of that offer that forms the basis for

Plaintiff's current request for attorney's fees.  *See* Doc. 41.  Some of those facts bear repeating

here because Plaintiff alleges Defendant's conduct in and throughout this litigation was

vexatious and patently unreasonable, particularly in the context of the entire case.  First, Plaintiff

complained about the very need for Mountain States to seek a declaratory judgment at the onset

in order to stave off meritless threats of a copyright infringement action against it by Defendant,

whom he characterizes as a copyright troll.  *See generally Malibu Media, LLC v. Doe*, No. 15

CIV. 4369 AKH, 2015 WL 4092417, at *2 (S.D.N.Y. July 6, 2015) ("Recent empirical studies

show that the field of copyright litigation is increasingly being overtaken by 'copyright trolls,'

roughly defined as plaintiffs who are 'more focused on the business of litigation than on selling a

product or service or licensing their [copyrights] to third parties to sell a product or service.'")

(internal citations omitted).

The dispute giving rise to Plaintiff's motion for attorney's fees arose after Defendant

made a Rule 68 offer of judgment to Mountain States on all its claims Plaintiff had against Mr.

Harrington in exchange for $1.01.  Among the claims Mountain States had against Harrington

was a declaratory judgment action, seeking to declare that Harrington had no valid copyright

claim against Mountain States.  Defendant made his offer of judgment to Mountain States on

May 29, 2020, and Plaintiff accepted it three days later and requested the clerk enter judgment in

its favor on June 2, 2020.  *See* Doc. 32 (Notice of Acceptance of Defendant's Judgment Offer

and Request for Entry of Judgment).  That should have been the end of the case.

The morning of June 2, 2020 (at 9:31 a.m.), defense counsel, Mr. Deal, sent Plaintiff's

counsel, Mr. Squires, an email stating that Squires "should be ashamed of [himself]" and that

Squires "sound[ed] like a tired, desperate, old man looking for things to do."  Doc. 44-1.  The

conflict arose because Defendant had announced his intent to maintain counterclaims for

copyright infringement against Mountain States, despite the offer of judgment and acceptance on

the declaratory judgment action.  At 11:26 a.m. the same day, Mr. Squires responded to Mr.

Deal, memorializing a telephone call earlier that morning, wherein Squires alleges that Deal

"began swearing at me and repeating over and again that I should be ashamed of my conduct in

filing the complaint . . . [and that Deal] would tell [others] what a shameful job I had done."

Doc. 44-1.  Mr. Squires also told Mr. Deal that the terms of Defendant's offer of judgment would

preclude any copyright infringement counterclaim against Mountain States, and that Squires

would "seek whatever remedies for improper litigation" were appropriate if Defendant continued

to pursue the infringement counterclaim.  *Id.*

Defendant did exactly that.  On June 11, 2020, Defendant advanced an ex parte email

communication to the Court seeking to reinstate a status conference that had been vacated as a

result of Plaintiff's request for entry of judgment.  Doc. 34 (Order for Status Conference,

attaching ex parte email communication).  In his ex parte communication, Mr. Deal said that

Defendant's offer of judgment was only directed to Plaintiff's claims, but that his counterclaims survived that offer of judgment, and Mr. Harrington intended to proceed on those counterclaims. Doc. 34-1. Magistrate Judge Laura Fashing held a status conference on June 17, 2020, admonishing the parties to be civil and professional in their dealings with one another, and reminding Mr. Deal that ex parte communication with the Court is prohibited. Doc. 35 (Clerk's Minutes). Judge Fashing ordered the parties to brief Defendant's contention that his counterclaims survived the acceptance of the offer of judgment. The narrow issue was not simply whether counterclaims survived a plaintiff's acceptance on an offer of judgment, but whether Defendant's copyright infringement counterclaim survived acceptance of the offer of judgment on the declaratory action "that Defendant's conduct precludes any claim for copyright infringement [Defendant] has threatened against Plaintiff." Doc. 37 at 6 (Plaintiff's Motion for Judgment on the Pleadings, citing Count I of the Complaint at § 17).

This Court agreed with Plaintiff regarding the termination of Defendant's infringement counterclaim in connection with the offer of judgment on the declaratory action, pronouncing that no such valid claim existed and ruling that Defendant "conceded a declaratory judgment that he has no copyright infringement action" against Plaintiff. Doc. 41 at 7-8. The Court explained that a defendant who makes an offer of judgment submits to entry of the judgment completely. *Id*. at 8. The Court found that "a declaratory judgment that 'Defendant's conduct precludes any claim for copyright infringement" means what it says, and that Defendant was precluded from asserting his copyright infringement claim against Plaintiff. *Id*. This Court further explained that:

> Plaintiff would not have settled its claims for $1.01 only to then face the very litigation it sought to declare impermissible via declaratory judgment—that result would be unreasonable. Defendant's offer clearly directed judgment on Plaintiff's claims, specifically including the declaratory judgment action. The fact that

> counterclaims were not expressly included is of no import where those claims were
> the precise actions precluded by the declaratory judgment action.

*Id*. at 9 (internal citation omitted).  This Court also recognized that Rule 68 offers may not be

revoked within fourteen days of their offering.  *Id*. at 9-10 (citing cases that recognize "all

federal courts to have considered the issue treated Rule 68 offers as generally irrevocable"); *see*,

*e.g.*, *Erdman v. Cochise County, Ariz.*, 926 F.2d 877, 880–81 (9th Cir. 1991) (citing *Rateree v.*

*Rockett*, 668 F. Supp. 1155, 1159 (N.D. Ill. 1987) ("it would be ludicrous and manifestly unjust

to allow the Defendants to argue after the fact that their offer really means more than it says.").

It is upon those findings and rulings that Plaintiff now maintains Defendant's entire

scheme of extorting money from innocent individuals and businesses browsing the web parlayed

into his unreasonable and vexatious conduct contesting the clear offer and acceptance of

judgment without any objectively reasonable basis, and that Mr. Deal's conduct as counsel in

this matter was also "unquestionably vexatious."  Doc. 44 at 3, 5.  Plaintiff argues that

Harrington's refusal to accept the consequences of his own offer of judgment was frivolous and

that his motivation in continuing to pursue his infringement counterclaim was highly improper.

*Id*. at 5.  Furthermore, Plaintiff cites Defendant's ex parte contact with the court and his uncivil

communication with opposing counsel as additional proof of Defendant and Mr. Deal's ill-will

toward Mountain States and Mr. Squires.  *Id*.  Plaintiff does not expressly seek fees jointly and

severally from Mr. Harrington and Mr. Deal; however, the Copyright Act permits fees to be

assessed against a party, while section 1927 only permits fees to be assessed against an attorney.

In the course of Defendant's conduct described here, Plaintiff claims $22,220 in

additional attorney's fees in this case.  Mr. Squires submits a Declaration in Support of

Plaintiff's Application for Award of Attorney Fees, wherein he submits a breakdown of fees

charged, and the resumes of all persons contributing to those fees.

Defendant and his counsel argue they acted in good faith and that none of their actions were frivolous, unreasonable or vexatious.  Doc. 46 at 2, 13.  Defendant contends the issue of whether Plaintiff's acceptance of the Rule 68 offer of judgment precludes his pursuit of the copyright counterclaim was less-than-settled, so any challenge thereto was legitimate and objectively reasonable.  *Id*. at 3.  He maintains that two points of law he previously argued supported his position.  First, that the Rule 68 offer was void because the parties had no meeting of the mind; second, that Harrington's status as a counterclaimant bringing infringement claims against a counter-defendant distinguished the case from other Rule 68 cases.  He characterizes his arguments as substantial questions of first impression that were novel, complex and colorable.  Doc. 46 at 10.  Next, Defendant argues that fees under the Copyright Act are improper here because the dispute leading to the request did not concern a question of copyright law, but instead arose from Plaintiff's declaratory judgment action.  Therefore, any award of fees would not serve the purpose of the Copyright Act.  Even if an award of fees is granted, Defendant challenges the requested amount as a dramatic overworking of a legal issue and thus is excessive and unreasonable.

## **Legal Standards**

### *Prevailing Party Fees Under The Copyright Act, 17 U.S.C. § 505*

The Copyright Act authorizes the award of reasonable attorney's fees to the prevailing party in a suit under the Act. 17 U.S.C. § 505. "[D]istrict courts are to use their discretion in awarding attorney's fees and costs to the prevailing party."  *Fogerty v. Fantasy, Inc.,* 114 S. Ct. 1023, 1028 n. 11 (1994).  No other precondition is required to recover attorney's fees as the prevailing party, except that the fee awarded must be reasonable.  *See BWP Media USA Inc. v. Clarity Digital Grp., LLC*, No. 14-CV-00467-PAB-KMT, 2016 WL 1222906, at *2 (D. Colo.

Mar. 29, 2016) (citing *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1556 (9th Cir. 1989.  The Supreme Court in *Fogerty* acknowledged that because fees under Section 505 are to be awarded to prevailing parties at the court's discretion, "'[t]here is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations we have identified.'" 114 S. Ct. at 1034 (quoting *Hensley v. Eckerhart,* 103 S. Ct. 1933, 1941-42 (1983)). The Court also suggested several nonexclusive factors for the district court to consider, including "'frivolousness, motivation, objective unreasonableness (both in the factual and the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *See* 114 S. Ct. at 1033 n.19 (quoting *Lieb v. Topstone Industries, Inc.,* 788 F.2d 151, 156 (1986)).  These "factors may be used to guide courts' discretion, so long as such factors are faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner." *Id.*  According to *Fogerty*, "[t]he primary objective of the Copyright Act is to encourage the production of original literary, artistic, and musical expression for the good of the public." 114 S. Ct. at 1030.

### *Attorney's Fees as a Sanction Against Attorney for Multiplying Litigation, 28 U.S.C. § 1927*

Sanctions under 28 U.S.C. § 1927 are appropriate when an attorney acts recklessly or with indifference to the law—this statute targets the vexatious and unreasonable multiplication of proceedings, which, when "viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *Miera v. Dairyland Ins. Co.,* 143 F.3d 1337, 1342 (10th Cir. 1998) (quotation omitted).  Section 1927 does not require a finding of bad faith: "Although subjective good faith on the part of a non-attorney party appellant may in some instances excuse otherwise unreasonable conduct, we are entitled to demand that an attorney exhibit some

judgment.  To excuse objectively unreasonable conduct by an attorney would be to state that one

who acts with 'an empty head and a pure heart' is not responsible for the consequences."

*Hamilton v. Boise Cascade Exp.,* 519 F.3d 1197, 1202 (10th Cir. 2008).  Such fees are only

available against attorneys, not parties.  *See Steinert v. Winn Grp., Inc.,* 440 F.3d 1214, 1221

(10th Cir. 2006).  Those fees may be awarded when an attorney is cavalier or bent on misleading

the court; intentionally acts without a plausible basis; [or] when the entire course of the

proceedings was unwarranted.  *Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.,* 430

F.3d 1269, 1278 (10th Cir.2005) (quotations and citations omitted; alteration in original).[7]  The

Tenth Circuit holds that "[s]ection 1927 contains no counterpart to the safe harbor and separate

motion requirements of Rule 11."[8]  *Steinert,* 440 F.3d at 1223.  The "power to assess costs

against an attorney under § 1927 . . . is a power that must be strictly construed and utilized only

in instances evidencing a 'serious and standard [sic] disregard for the orderly process of

justice.'" *Dreiling v. Peugeot Motors of America, Inc.,* 768 F.2d 1159, 1165 (10th Cir. 1985)

(quoting *Kiefel v. Las Vegas Hacienda, Inc.,* 404 F.2d 1163, 1167 (7th Cir. 1968) (§ 1927

sanction for "serious and studied disregard" of judicial process).

---

[7] *See also In re TCI Ltd.,* 769 F.2d 441, 445 (7th Cir.1985) ("by acting recklessly or with indifference to the law, as well as by acting in the teeth of what he knows to be the law.... A lawyer's reckless indifference to the law may impose substantial costs on the adverse party.  Section 1927 permits a court to insist that the attorney bear the costs of his own lack of care."); *see also Reliance,* 792 F.2d at 1138 (attorneys accountable under § 1927 not only for subjective bad faith conduct but also for "reckless indifference to the merits of a claim"); *Toombs v. Leone,* 777 F.2d 465, 471 (9th Cir. 1985) (sanctions appropriate under § 1927 when counsel has acted recklessly or in bad faith); *Knorr Brake Corp. v. Harbil, Inc.,* 738 F.2d 223, 227 (7th Cir. 1984) (attorney must intentionally act without a plausible basis, but the court "need not find that the attorney acted because of malice"); *United States v. Ross,* 535 F.2d 346, 349 (6th Cir. 1976) (personal attorney responsibility under § 1927 should "flow only from an intentional departure from proper conduct, or, at a minimum, from a reckless disregard of the duty owed by counsel to the court").

[8] Plaintiff withdrew its request for fees under Rule 11 for admittedly failing to comply with the safe harbor requirements of that rule.  Doc. 47 ("Mountain States acknowledges that it has not complied with the preconditions for requesting sanctions found in Rule 11(c)(1), and so relies on the statute, rather than Rule 11, in seeking an award of fees . . . .").

## Analysis

Because there are specific statutory bases for imposing monetary sanctions in this case under 28 U.S.C. § 1927 and 17 U.S.C. § 505 of the Copyright Act,[9] the Court need not explore the entire parameters of the Court's inherent power to impose sanctions otherwise.  *Chambers*, 111 S. Ct. at 2135 n. 14 (citing *Cf. Zaldivar v. Los Angeles,* 780 F.2d 823, 830 (9th Cir. 1986) (finding that in many instances it might be improper to invoke one general fee provision when another directly applies), *abrogated on other grounds at Cooter & Gell v. Hartmarx, Corp.,* 110 S. Ct. 2447 (1990) (concerning standard of review)).  The Court will instead focus its analysis on Plaintiff's right to fees under those two statutory provisions.

### Plaintiff is Entitled to Prevailing Party Fees Under the Copyright Act

While awards for attorney's fees are not granted to the prevailing party automatically under the Copyright Act, neither are they confined to "exceptional circumstances."  Rather they are to be granted when equity and the ends of the Copyright Act are advanced.  *Fogerty*, 114 S. Ct. at 534; *see also Palladium Music, Inc. v. EatSleepMusic, Inc*., 398 F.3d 1193, 1200 (10th Cir. 2005).  In fact, district courts within this circuit have observed that "[t]hough said to be a matter within the court's discretion, attorney's fees are awarded more often as the rule than the exception."  *Walden Music, Inc. v. C.H.W., Inc.,* No. 95-4023-SAC, 1996 WL 254654, at *6 (D. Kan. 1996) (citing *Big Tree Enterprises, Ltd. v. Mabrey,* 9304924-SAC, 1994 WL 191996, at *8

---

[9] The Tenth Circuit recognizes the importance of the courts' power to assess monetary sanctions against attorneys as well as against their clients.  The courts' duty, within the spirit of their total powers, is "to impose sanctions and compensating awards of expenses, including attorney's fees, in a manner designed to solve the management problem. If the fault lies with the attorneys, that is where the impact of the action should be lodged." *In re Sanction of Baker,* 744 F.2d 1438, 1442 (10th Cir. 1984) (en banc); *see also Herzfeld & Stern v. Blair,* 769 F.2d 645, 647 (10th Cir. 1985). Other circuits have stated that "[a]ttorneys can be held jointly and severally liable with their clients under Rule 38 for bringing frivolous appeals." *Bartel Dental Books Co. v. Schultz,* 786 F.2d 486, 491 (2d Cir. 1986); *see also Reliance,* 792 F.2d at 1138; *Toepfer,* 792 F.2d at 1103. Most courts so holding rely on the conjunctive in Rule 38 and 28 U.S.C. § 1927 to impose sanctions on attorneys.  *See Braley v. Campbell*, 832 F.2d 1504, 1511 (10th Cir. 1987).

(D. Kan.), aff'd 45 F.3d 439 (10th Cir. 1994); *see also Frank Music Corp. v. Sugg,* 393 F.Supp.2d 1145, 1147 (W.D. Okla.2005); *Capitol Records, Inc. v. Foster*, No. CIV. 04-1569-W, 2007 WL 1028532, at *2 (W.D. Okla. Feb. 6, 2007).

The Supreme Court's *Fogerty* factors guide the analysis of whether prevailing party fees are appropriate in this case under the Copyright Act.[10]   For purposes of federal fee shifting statutes, a party has prevailed when there has been a judicially sanctioned "material alteration of the legal relationship of the parties."  *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.,* 121 S. Ct. 1835, 1840 (2001).  In order to establish that it is a "prevailing party," Plaintiff must show that (1) there has been a material alteration of the legal relationship of the parties and (2) the alteration has been judicially sanctioned.  In the decretal portion of its September 23, 2020 Order on Plaintiff's Motion Regarding Defendant's Offer of Judgment (Doc. 41) the Court ordered that:

> declaratory judgment shall enter pursuant to judgment in Plaintiff's favor on count I, **AND IT IS DECLARED** that Defendant's conduct precludes any claim for copyright infringement that Defendant Harrington has threatened and/or filed against Plaintiff. **IT IS FURTHER ORDERED** that pursuant to the entry of declaratory judgment, Defendant's counterclaims are dismissed with prejudice.

Doc. 41 at 15 (emphasis in original).  It is therefore beyond cavil that the Court had dismissed Defendant's counterclaims against Plaintiff with prejudice and materially altered the legal relationship of the parties.  As such, Plaintiff is a prevailing party for purposes of section 505.

Next, the Court considers the *Fogerty* factors.

**1.   <u>Frivolousness</u>**

---

[10] Notably, this provision allows the court to award fees to either a prevailing plaintiff or a prevailing defendant. *See Fogerty*, 114 S. Ct. at 1033.

"[A] frivolous claim under the Copyright Act is one that, in either the factual or legal assertions, is clearly baseless." *Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, LA CV16-00339 JAK(FFMx), 2017 WL 8236267, at *7 (C.D. Cal. Dec. 5, 2017).  Put another way, when the result is obvious or the arguments are wholly without merit, a claim is frivolous.  *Id*.  A lawsuit is not frivolous if the plaintiff's legal and factual positions are tenable and the lawsuit is a legitimate copyright case (albeit unsuccessful).  *Wood v. Cendant Corp*., No. 03-CV-298-TCK-FHM, 2007 WL 2034250, at *2 (N.D. Okla. July 9, 2007).  For example, in *Wood*, the court found in favor of the defendant on all the copyright infringement claims, but the court did not award attorney's fees because the plaintiff's claims were legitimate, and the plaintiff's lack of credibility did not warrant a conclusion that the claims were frivolous.  *Id*. at *10-14.

In the instant case, Plaintiff alleges that it was forced to bring a declaratory judgment action to extinguish baseless threats for copyright infringement that Harrington made against Mountain States as described above.  Defendant proceeded to concede judgment in Plaintiff's favor for $1.01, essentially quashing his prior threats to bring an infringement actions against Mountain States.  Instead of leaving well enough alone, however, Mr. Harrington, and at times his counsel Mr. Deal, set out on a personal and unprofessional verbal attack of Mr. Squires, while also in violation of the rule prohibiting ex parte communication with the court, threatening and later attempting to revive his copyright infringement claim after making an irrevocable offer of judgment to Plaintiff, which Plaintiff timely accepted.  While Defendant attempts to bolster the grounds for his claim and conduct under the cloak of subjective good faith and reasonableness, that position is belied by this Court's prior order disposing of those arguments in toto.  The Court rejects Defendant's effort to cast his claims into the zone of first impression, novel or complex issues.  Just because others have not attempted his precise litigation tactic does

not mean it is a matter of first impression, novel or complex.  Novel issues generally present matters upon which fair-minded jurists might reach contradictory conclusions.  Here, the Court has already explained that Defendant's "meeting of the minds" argument failed because he knew or should have known the meaning Plaintiff would attach to the clear terms in the offer of judgment when Defendant specifically offered to resolve the declaratory judgment action in Plaintiff's favor, which expressly disavowed the merit of any infringement claim against Mountain States.  *See* Doc. 41 at 12.

Defendant's second basis for alleged good faith conduct also falls short.  While he claims the existence of counterclaims could somehow change the legal effect of his rule 68 offer, that argument misses the point.  The Court was not just considering the impact of counterclaims when it issued a rule 68 order of judgment; instead, as stated *supra*, the issue was whether Defendant had *any* legal basis for arguing that he could pursue an infringement counterclaim after the Court expressly dismissed that very counterclaim with prejudice?  Doc. 41.  The Court could not have been clearer that Defendant did not have any legal basis for that claim. Additionally, the Court cited the general agreement among courts that the offers of judgment are irrevocable, and thus Defendant's effort to modify his offer, particularly in light of the context of this case, was wholly without merit.  *Id*. at 9-10.  This factor weighs in favor of awarding attorney's fees to Plaintiff.

## 2.  Motivation

"The existence of bad faith or an improper motive in bringing or pursuing an action weighs in favor of an award of fees to a prevailing party."  *Frost-Tsuji Architects v. Highway Inn, Inc.*, 13-00496 SOM/BMK, 2015 WL 5601853, at *7 (D. Haw. Sept. 23, 2015).  "A finding of bad faith can be based on actions that led to the lawsuit, as well as on the conduct of the

litigation." *Id.* (citing *Hall v. Cole*, 412 U.S. 1, 15 (1973)).  The Court cannot easily discern Defendant's motivation in threatening Plaintiff with an infringement action unless Mountain States paid him $6000.  Clearly, it behooves him to contend he was protecting his creative images.  Yet, he does not contest that he failed to adequately mark that artwork with a copyright indication before placing it in the public internet forum.  The fact that Defendant made the offer of judgment to resolve the case, ostensibly agreeing to a declaratory judgment finding that his behavior precluded any infringement action (even though he denies his rationale in making the offer of judgment) at least speaks to the plausibility of an "oops-just-kidding" mentality of which Plaintiff accuses him.  Harrington resolved Plaintiff's claims for a $1.01, but then quickly recanted his offer with guns blazing on the infringement counterclaims he had just conceded *vis a vis* the declaratory judgment against him.  The Court makes no findings on the copyright troll allegations, but finds that Harrington's chance to be free of any fee assessment to the prevailing party under the Copyright Act expired when he attempted to unilaterally modify or rescind the terms of his offer of judgment by expressly reasserting his infringement claim against Mountain States.  Because evidence of his motivations is not before the Court, however, this factor rests in equipoise, neither in favor nor against the assessment of prevailing party fees.

    **3.  <u>Objective Unreasonableness</u>**

    A copyright infringement action is "objectively unreasonable when the claim is clearly without merit or otherwise patently devoid of a legal or factual basis." *Porto v. Guirgis*, 659 F. Supp. 2d 597, 617 (S.D.N.Y. 2009) (internal quotation marks omitted).  In this case, although Plaintiff brought a declaratory judgment action against Defendant, the actual copyright infringement claim was asserted as a counterclaim by Defendant against Plaintiff.  If that claim was without merit or otherwise patently devoid of a legal or factual basis, then it can be said to

be objectively unreasonable.  *Stan Lee Media, Inc. v. Walt Disney Co*., No. 12-CV-2663-WJM-KMT, 2014 WL 3767191, at *2 (D. Colo. July 31, 2014) (citing *Diplomatic Man, Inc. v. Nike, Inc.,* 08 Civ. 139(GEL), 2009 WL 935674, at *3 (S.D.N.Y. Apr. 7, 2009).

Plaintiff argues the counterclaims were frivolous and objectively unreasonable because Defendant pursued his action despite Plaintiff making its position and the law well known by prophylactically filing a declaratory judgment action to establish that Defendant had no basis for an infringement claim against the Plaintiff.  Plaintiff alleged that Defendant was in the business of "luring innocent individuals and profit and non-profit businesses into downloading copies of photographs he has taken in New Mexico, without identifying those photographs as being his works or subject to copyright protection, and then threatening to sue or suing those individuals or entities in order to exact money from them."  Doc. 1 ¶ 2.  Plaintiff describes an extortionate scheme, whereby Harrington makes his photographs public without providing notice of his copyright, then searches the web for persons who have downloaded them, and contacts them to announce his claim to ownership, threatening to sue unless they pay him $6000 – an amount that far exceeds the fair market value to purchase or license the photograph, but is less than the amount of attorneys' fees required to defend against such a claim in court.  *Id*. ¶¶ 6-7.  Plaintiff alleged the existence of hundreds of such threats and more than 50 actual lawsuits by Harrington, many in the District of New Mexico.  *Id*. ¶ 8.  In response, Defendant made the nominal offer of judgment, specifying judgment in Plaintiff's favor on all its claims, particularly noting the declaratory judgment action.

Harrington's refusal to accept the dismissal of his infringement counterclaim based on the plain language of his offer and the applicable law in that area, as well as in light of Plaintiff's prompt acceptance of the offer, further substantiate Harrington's unreasonableness.  The pursuit

of claims without any objectively reasonable basis is afforded substantial weight in this analysis. *See Earth Flag Ltd. V. Alamo Flag Co.*, 154 F. Supp. 2d 663, 666 (S.D.N.Y. 2001) (citation omitted). The fact that Harrington and Deal are experienced copyright litigants accentuates their unreasonableness here because, according to Plaintiff, both of them are familiar with the fee-shifting provision in the Copyright Act.

As stated above, Defendant counters that his copyright claims were objectively reasonable because: 1) he believed there was no meeting of the minds on the offer of judgment because he clearly stated the offer of judgment did not preclude him from pursuing his copyright claims; and 2) this case involved counterclaims, rather than a simple plaintiff versus defendant situation. Doc. 46 at 9-10. In *Erickson v. Sympathy for the Record Industry*, No. C10-00636 HRL, 2011 WL 1211533,*2 (N.D. Cal. March 30, 2011), the district court awarded fees to the prevailing plaintiffs for their efforts to enforce payment of a judgment offered by the defendants pursuant to rule 68, when the defendant failed to comply with the terms of his offer after it had been accepted. Here, Defendant invited the rule 68 conflict into the copyright lawsuit. The Court disagrees with Defendant's theory that Copyright Act fees should not be applied to a controversy that centered on a rule of civil procedure because under *Fogerty*, Defendant's objectively unreasonable position on that legal issue in the context of this copyright case is a valid consideration that weighs in Plaintiff's favor. Defendant also incorrectly attempts to distinguish *Erickson* as having relied on California law rather than the Copyright Act in awarding fees to the prevailing party. Doc. 46 at 11. Although the *Erickson* court begins its analysis with reference to California's state law concerning attorney's fees because "neither side has identified an applicable federal statute," and the parties proceeded under Fed. R. Civ. P. 69 as a supplemental proceeding, that court immediately states that California law permits fees

"otherwise allowed by law." *Erickson*, 2011 WL 1211533, at \*2.  It then applied the "prevailing party" provision of 17 U.S.C. § 505, ruling that plaintiffs who prevail via an offer of judgment are "prevailing parties" entitled to attorney's fees when warranted.  *Id*. (Plaintiffs "asserted a claim for violation of the Copyright Act. The Copyright Act provides that the court may, in its discretion, allow full recovery of costs by or against any party and may also award reasonable attorney's fees to a prevailing party as part of the costs. 17 U.S.C. § 505.").  While not directly on point, *Erickson* does support Plaintiff's request for fees.

In conclusion, the Court finds that it was not objectively reasonable for Defendant to attempt to (1) modify and rescind his offer of judgment, (2) initiate an ex parte contact with the court about Defendant's intent to proceed on the copyright infringement claim about which he had just conceded a declaratory judgment, and (3) then force Plaintiff to litigate those issues. This factor weighs in favor of awarding prevailing party fees to Plaintiff.

### 4.   The Need to Advance Considerations of Compensation and Deterrence

Fee awards under § 505 "should encourage the types of lawsuits that promote" the purposes of the Copyright Act such as "encouraging and rewarding authors' creations while also enabling others to build on that work." *Kirtsaeng v. John Wiley & Sons, Inc*., 136 S. Ct. 1979, 1986 (2016) (citation omitted).  The Supreme Court instructs that any award of fees must consider the essential goals of the Copyright Act.  *Id*.  Copyright law "ultimately serves the purpose of enriching the general public through access to creative works." *Fogerty*, 114 S. Ct. at 1025.  The statute achieves that end by striking a balance between two subsidiary aims: encouraging and rewarding authors' creations while also enabling others to build on that work. *Kirtsaeng*, 136 S. Ct. at 1986 (citing *Fogerty,* 114 S. Ct. 1023).  Because that end is served by delineating the boundaries of copyright law as clearly as possible, both plaintiffs and defendants

should be encouraged to litigate their meritorious claims and defenses. *Id.* However, the factual and legal components of the case must also be reasonable, as considered above. Defendant relies upon a string of inapposite cases arguing that an award of fees in this case would not promote the purposes of the Copyright Act. Doc. 46 at 10-11.

The Court finds that an award of prevailing party fees in this case should help motivate Defendant, and others like him, to properly mark their creative works in order to avoid situations like that which occurred here. Moreover, a fee award will compensate Plaintiff for the steps it felt required to take to establish that no infringement claim could rightly stand based on the facts presented here. Defendant's offer of judgment for $1.01 speaks to the value of his defense to this declaratory judgment action; indeed, the offer of judgment was in part a concession that he did not have a valid infringement action because of his conduct, as declared in the judgment dated October 1, 2020. Doc. 42. Without evidence to consider whether Plaintiff's copyright troll allegations have merit, a fee award in this case will nonetheless deter Defendant and others like him from seeking exorbitantly high settlement amounts that far exceed the value to purchase or license copyrighted material. An award of fees here should "beneficially deter, rather than excessively kill, future lawsuits" and future conduct in copyright litigation that unreasonably prolongs the litigation.

To a great extent, the need to advance considerations of compensation and deterrence goes hand in hand with the inquiry into the reasonableness of the parties' positions. *Luken v. Int'l Yacht Council, Ltd.*, 581 F. Supp. 2d 1226, 1246 (S.D. Fla. 2008). Consistent with furthering the purposes of the Copyright Act, a party that advances a reasonable position should not be deterred from doing so for fear that it will have to pay attorney's fees if it loses. *Id.* (citation omitted). Conversely, a party that presents only objectively unreasonable claims or

18

defenses should not be encouraged in such conduct and, in fact, should pay the attorney's fees associated with the prevailing party's resulting necessary prosecution or defense. Along these same lines, a party that seeks to enforce its copyrights and prevails over frivolous or objectively unreasonable claims or defenses should have its attorney's fees awarded to promote enforcement of the Copyright Act and creativity, respectively. With this in mind, the Court finds that its rulings with respect to frivolousness and objective unreasonableness govern its determinations with regard to compensation and deterrence.  The Court concludes that an award of fees to Plaintiff furthers the Act's goals of compensation and deterrence. This final factor thus also weighs in Plaintiff's favor.  The Court will, therefore, award an amount of attorney's fees to Plaintiff by Mr. Harrington under the Copyright Act based on the findings and conclusions here. However, the Court will adjust the amount of fees awarded pursuant to the evaluation discussed *infra*.

<u>Sanctions for Prolonging Litigation Based on 28 U.S.C. § 1927</u>

Section 1927 allows a court to require an attorney to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of [vexatiously multiplicative] conduct."  *Id*.  Defendant states that because section 1927 is penal in nature, it is strictly construed "so that it does not 'dampen the legitimate zeal of an attorney in representing his client.'"  Doc. 12 (citing *Lee v. L.B. Sales, Inc.,*177 F.3d 714, 718 (8th Cir. 1999) (quoting *Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.,*38 F.3d 1414, 1416 (5th Cir. 1994)); *see also F.D.I.C. v. Calhoun*, 34 F.3d 1291, 1297 (5th Cir. 1994) ("[p]unishment under [Section 1927] is sparingly applied").  In 1990, the Tenth Circuit did acknowledge that section 1927 was penal in nature.  *See Miera*, 143 F.3d at 1342 (citing *White v. American Airlines, Inc*., 915 F.2d 1414, 1427 (10th Cir.1990) (quotation omitted).  The Court subsequently recognized that the text

of § 1927, however, unlike that of Rule 11, also indicates a purpose to compensate victims of abusive litigation practices, not to deter and punish offenders.[11]  *Hamilton v. Boise Cascade Exp.*, 519 F.3d 1197, 1205 (10th Cir. 2008).  Some commentators maintain that the purpose of the section 1927 is more geared to deterrence than compensation.  *See* Amer. Bar. Assn', § 12.03 28 U.S.C. § 1927 AND THE COURT'S INHERENT POWER, Rule 11 Sanctions § 12.03 (citing *Beatrice Foods Co. v. New England Printing & Lithographing, Inc*., 899 F.2d 1171, 1177 (Fed. Cir. 1990) (deterrence of intentional and unnecessary delay in the proceedings is a principal purpose of section 1927)).  This Circuit has also found that the statute fits more comfortably with a victim-centered approach than a punishment approach, and it's been unwilling to supply a parsimony provision where Congress has not done so itself.  *Compare Fox Valley Constr. Workers Fringe Benefit Funds v. Pride of Fox Masonry & Expert Restorations,* 140 F.3d 661, 667 (7th Cir. 1998) ("[W]here the [§ 1927] sanctions were tailored as well as possible to compensate the other party for time lost to [attorney's] antics, we will not require the court to consider [his] ability to pay.") *with Samuels v. Wilder,* 906 F.2d 272, 276 (7th Cir. 1990) (Easterbrook, J.) ("Rule 11 and § 1927 are *sanctions* rules, not compensation devices.").  The original attorney fee provision at issue here dates to 1813, but the legislative history fails to illumine whether the Thirteenth Congress intended it as a compensatory or a deterrent mechanism.  *Hamilton v. Boise Cascade Exp.*, 519 F.3d 1197, 1205–06 (10th Cir. 2008) (citing Act of July 22, 1813, ch. 14, § 3, 3 Stat. 19, 21 (allowing court to consolidate related cases and to require attorney who "shall appear to have multiplied the proceedings in any cause before the court so as to increase costs unreasonably and vexatiously . . . to satisfy any excess of costs so incurred")).  While the Court agrees the statute should be strictly construed, any caution against

---

[11] Rule 11 expressly provides that "[a] sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

imposing § 1927 sanctions in inappropriate cases, however, should not prevent a Court from awarding sanctions for conduct that manifests intentional or reckless disregard of the attorney's duties to the court. *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987).

Whether the purpose of section 1927 is compensatory or penal ultimately matters not in this case because the sanctions awarded will satisfy both goals. Compensation is served through remittance of the fees Plaintiff incurred based on the reckless disregard Defendant showed by (1) digging in his heals on a copyright claim after making Plaintiff an offer of judgment on a declaratory judgment action that expressly deemed the infringement action without merit, (2) unilaterally attempting to modify an inalterable offer of judgment, and then (3) seeking to avoid the consequences that flowed from Plaintiff's acceptance of the offer. Fees may also serve to mitigate unnecessary and lengthy litigation where an offer of judgment in a copyright case, or any other case, should otherwise lead to the efficient and prompt resolution of disputes.

The sole cause of the multiplicative proceedings in this case is Defendant's attempt to unilaterally modify the offer of judgment by carving out his counterclaims for copyright infringement, despite specifically making an offer of judgment that confessed that no such claim existed. While Mr. Deal professes to have consulted with other experienced litigators in the area regarding his decision to move forward in his claims (Doc. 46-1 [Deal Decl. ¶¶ 17-21]), he stops short of submitting their affidavits or any helpful evidence that anyone encouraged his success or affirmed a good faith basis for his position based on the law and the facts present in this case. The Court finds and concludes that fees against Mr. Deal are appropriate based on section 1927.

### *Reasonableness of Fees*

"To determine the reasonableness of a fee request, a court must begin by calculating the so-called 'lodestar amount' of a fee, and a claimant is entitled to the presumption that this

lodestar amount reflects a 'reasonable' fee." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). The lodestar is " 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate,' which produces a presumptively reasonable fee that may in rare circumstances be adjusted to account for the presence of special circumstances." *Anchondo v. Anderson, Crenshaw & Assoc., LLC*, 616 F.3d 1098, 1102 (10th Cir. 2010) (quotation omitted); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 543-44, 130 S. Ct. 1662 (2010) ). "The party requesting attorney fees bears the burden of proving" the two components used to calculate the fee award: (i) "the amount of hours spent on the case"; and (ii) "the appropriate hourly rates." *United Phosphorus, Ltd. v. Midland Fumigant, Inc*., 205 F.3d 1219, 1233 (10th Cir. 2000); *see New Mexico v. Valley Meat Co., LLC*, No. CIV 14-1100 JB/KBM, 2015 WL 9703255, at *22 (D.N.M. Dec. 14, 2015) (citing *United Phosphorus, Ltd. v. Midland Fumigant, Inc*., 205 F.3d at 1233). Once the Court makes these two determinations, the fee "claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." *Robinson v. City of Edmond*, 160 F.3d at 1281.

To determine the number of hours expended, the Court reviews counsel's billing entries to ensure that counsel exercised proper billing judgment. *Case v. Unified Sch. Dist. No. 233,* 157 F.3d 1243, 1250 (10th Cir.1998). Once the Court determines the lodestar, it may "adjust the lodestar upward or downward to account for the particularities" of the work performed. *Phelps v. Hamilton,* 120 F.3d 1126, 1131 (10th Cir. 1997). The Court is not required to reach a lodestar determination in every instance, however, and may simply accept or reduce a fee request within its discretion. *Hensley,* 461 U.S. at 436–37.

As for the hourly rate, the Tenth Circuit has indicated that the court must look to what the evidence shows the market commands for analogous litigation. *See Burch v. La Petite Academy,*

*Inc.,* 10 F. App'x 753, 755 (10th Cir. 2001) (quoting *Case,* 157 F.3d at 1255).  The "local market rate" is usually defined by the state or city in which counsel practices.  *Ellis v. Univ. of Kan. Med. Ctr.,* 163 F.3d 1186, 1203 (10th Cir.1998) (looking at "the prevailing market rates in the relevant community", which was Kansas City, Kansas).  The burden is on the party seeking fees to provide evidence of the prevailing market rate for similar services by "lawyers of reasonably comparable skill, experience, and reputation" in the relevant community.  *Ellis,* 163 F.3d at 1203.

Plaintiff has produced no evidence regarding the "prevailing market rates" of comparable intellectual property attorneys in Albuquerque.  *See Broad. Music, Inc. v. Cleatz Bar & Grill, LLC,* 12-cv-00321-REB-CBS, 2013 WL 753468, at *2 (D. Colo. Feb. 27, 2013) (relying on declaration attesting to reasonable rates of American Intellectual Property Law Association surveys to find reasonable rate sought); *Live Face on Web, LLC v. Integrity Sols. Grp., Inc.,* No. 16-CV-01627-CMA-STV, 2020 WL 3971640, at *3 (D. Colo. July 14, 2020) ("Although the setting of a reasonable hourly rate is within the district court's discretion, it should "reflect the 'prevailing market rates in the relevant community.'").  Because Mr. Squires did not provide evidence of the prevailing market rate for similar services by lawyers of reasonably comparable skill, experience, and reputation in Albuquerque, the Court must use its discretion to determine if the charged hourly rates here are reasonable.  *See Case v. Unified School Dist. No. 233*, 157 F.3d 1243, 1257 (10th Cir. 1998) ("Only if the district court does not have before it adequate evidence of prevailing market rates may the court, in its discretion, use other relevant factors, including its own knowledge, to establish the rate."); *Munoz v. FCA US, LLC*, 17-881 WJ/SCY, 2020 WL 6126454 (D.N.M. Feb. 28, 2020) (finding hourly rate of $300 in Albuquerque "is only appropriate for attorneys with many years of experience) (citing cases that allowed similar rates

for lawyers with 11, 16, and more than 30 years' experience).  Although Plaintiff's declaration alone is insufficient evidence to prove the reasonableness of his requested rate, his brief and affidavit include rate information for all lawyers and staff who worked on the case that is arguably higher than what the Court's own knowledge of rates is for this kind of work completed in the Albuquerque area.  Doc. 44-2.  Plaintiff seeks compensation for work performed by three attorneys in his office, including himself, and one non-attorney, at the rates of $500,[12] $275,[13] $225,[14] and $200[15] per hour.  Despite submitting no evidence in support of the fee rates sought with the exception of his own declaration, when Defendant provided the results of a 2012 study on legal fees in New Mexico that showed significantly lower rates than what Plaintiff's attorneys charged, Mr. Squires replied by informing the Court that in 2017, the same report from New Mexico increased the average hourly rate of attorneys who practiced in the intellectual property field from $211 to $277 – in both accounts the rate is significantly less than Mr. Squires' rate.  *See* Doc. 47 at 8 & n.5.  The Court finds that Plaintiff has failed to meet its burden of establishing the "prevailing market rate" beyond counsel's summary contention; the Court will therefore rule on the appropriate amount according to its discretion.

Defendant argues the fees here should be reduced because Plaintiff fails to distinguish a rate for legal work versus clerical or other similar work that may be performed by non-attorneys.

---

[12] This is Mr. Squires' current rate and has been so for three years.  He's practiced law since 1973, and in more than fifteen federal districts.  His fees here total $15,700, for 31.4 hours.  Doc. 44-2 at 6.

[13] This is the rate for Mr. Muehlmeyer, a partner in Mr. Squires' firm.  He's practiced law since 2015.  His fees here total $2255, for 8.2 hours.  *Id.*

[14] This is Ms. Anderson's rate; she is an associate attorney at Mr. Squires' firm and has practiced law since 2017; her fees here total $1305, for 5.8 hours.  *Id.*

[15] This rate is for Mr. Santamaria, a recent graduate of the University of New Mexico Law School who passed the New Mexico bar examination just before Plaintiff filed its motion for fees, and his fees total $2960, for 14.8 hours.  *Id.*

Doc. 46 at 16.  Plaintiff responds to that contention simply by asserting that all fees were

legitimately and necessarily incurred (and that he did not include the time spent on Plaintiff's

reply brief).  Doc. 47 at 9.  Upon review, the Court finds that some of the fees charged appear

excessive because (1) they exceed the prevailing market rate, and (2) while it may be reasonable

to have an attorney and a paralegal/non-lawyer working on a matter such as this, and possibly

additional assistance from a lower-level associate or an administrative assistant, here Plaintiff

billed extensive hours for three lawyers and one non-lawyer, and Mr. Squires billed the non-

lawyer at a lawyer's rate.  All combined those who billed worked on the attorney's fee issue for a

total of 60.2 hours, 38.5 of which occurred from June to September 2020, and additional 21, 7

hours for Mr. Squires and Mr. Santamaria in October 2020.  Two of the lawyers working on this

matter were partners, one of whom has more than 30 years of practice in the legal area; the

others had much less experience.  Plaintiff has not submitted evidence of comparable work hours

for such issues, and while the Court has no reason to question the hours were in fact expended, it

agrees with Defendant that the number of lawyers billed for the matters together with the

amounts charged is unreasonable, including the fact that Plaintiff submitted a bill for a non-

lawyer working at a lawyer's rate.

The Court will, therefore, reduce in part the rates charged and the number of hours

expended by the attorneys.  Mr. Squires submits argument (but not evidence) that the average

rate for lawyers in his field was $277 in 2017, and that his rate was $500 per hour.  The Court

will instead assess a reasonable fee of $350 per hour (rather than $500) for Mr. Squires, allowing

him to collect 14.7 and 16.7 hours, or a total of 31.4 hours.  The amount awarded for Mr.

Squires' fees is therefore $10,990, instead of $15,700, a reduction of $4710.  In the absence of

any other evidence of reasonable rates submitted by Plaintiff, the Court finds this rate to be fair

based on the information available.  Next, the Court is troubled by the total number of hours

(60.2) and the number of lawyers/non-lawyers (4) assigned to this largely procedural motion—

*i.e.*,  a motion for attorneys' fees related to the enforcement of a rule 68 offer of judgment—

which is neither complex or highly technical.  Because the Court is troubled by the high billable

rate for Mr. Santamaria before he became a licensed attorney, *i.e.*, clearly a lawyer's rate, and

because the total amount of time spent on this issue appears excessive in general, and Plaintiff

has provided no evidence otherwise, the Court will also deduct the 14.8 hours billed by Mr.

Santamaria in this matter.  Mr. Santamaria is essentially the fourth attorney-level rate billed in

the attorney fee matter, and he was a law school graduate awaiting his bar license, whom Mr.

Squires nonetheless billed at an attorney's rate of $200 per hour.  Reducing Mr. Santamaria's

14.8 hours from the total fee award is a reduction of $2960, which the Court finds reasonable in

light of the factors discussed here. The total amount of fees granted to Plaintiff is, therefore,

$14,550, which is awarded jointly and severally against the Defendant Mr. Harrington, and his

lawyer, Mr. Deal because the Court finds that Harrington is liable under section 505 and Deal

under section 1927.

   In conclusion, the Motion for Attorney's Fees is GRANTED in part and DENIED in part.

Attorneys' fees are awarded pursuant to 17 U.S.C. § 505 against Defendant and his attorney, and

under 28 U.S.C. § 1927 against Mr. Deal.  The motion is denied on the other grounds by which

Plaintiff sought to obtain an award for fees.  The amount of fees Plaintiff will be awarded is

reduced from the requested amount of $22,220 to $14,550.  Mr. Harrington and Mr. Deal are

jointly and severally liable for that amount, with each being ordered to pay Mr. Squires' within

thirty days of this order.

**IT IS SO ORDERED.**

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**
**Presiding by Consent**